PATRIC HOOPER (State Bar No. 57343)
**HOOPER, LUNDY & BOOKMAN, P.C.**
1875 Century Park East, Suite 1600
Los Angeles, California 90067
Telephone: (310) 551-8111
Facsimile:  (310) 551-8181
E-Mail:     phooper@health-law.com

Attorneys for Plaintiffs BDO CORPORATION DBA FAIRFAX PHARMACY AND WEST OAKS CORPORATION DBA NORMS PHARMACY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| BDO CORPORATION dba FAIRFAX PHARMACY and WEST OAKS CORPORATION dba NORMS PHARMACY, <br><br> Plaintiffs, <br><br> vs. <br><br> ENVISION RX OPTIONS HOLDINGS, INC. dba ELIXIR INSURANCE, <br><br> Defendant. | Case No. <br><br> **COMPLAINT FOR INJUNCTIVE RELIEF** <br><br> Trial Date:    None Set |

Plaintiffs BDO Corporation doing business as Fairfax Pharmacy ("Fairfax") and West Oaks Corporation doing business as Norms Pharmacy ("Norms"), allege as follows:

## JURISDICTION AND VENUE

1. This Court has jurisdiction under 28 U.S.C. § 1331 to enjoin the defendant Envision Rx Options Holdings, Inc., doing business as Elixir Insurance, a Medicare approved Prescription Drug Plan ("Elixir"), from suspending Fairfax and Norms from its network of Medicare Part D pharmacy providers under federal law, including the Medicare statutes and regulations and the Due Process Clause of the United States Constitution. The Court also has jurisdiction to grant such relief under 28 U.S.C. § 1361, because defendants have a mandatory duty under federal law and under the Constitution to grant the relief requested. Moreover, diversity jurisdiction exists under 28 U.S.C. § 1332 because Elixir is incorporated in Delaware, its principal place of business is in Ohio, and the amount in controversy exceeds $75,000.

2. Venue is appropriate in this judicial district because Fairfax and Norms are located and do business within this judicial district, and the actions giving rise to this lawsuit occurred within this judicial district.

## OVERVIEW

3. Fairfax and Norms are family-owned neighborhood pharmacies that have provided pharmacy services and drugs to their local communities for many years. For example, Fairfax has served its local community for more than 25 years. Some of its patients have been customers of Fairfax for more than 20 years. The pharmacies' customers are primarily geriatric patients, many of whom are beneficiaries of Part D of the Medicare program. Elixir is a subsidiary of Rite Aid Corporation, a national pharmacy chain. Elixir is a "Sponsor" of a Medicare Part D Prescription Drug Plan. In other words, Elixir contracts with the Medicare program to provide pharmaceuticals to its "members," Medicare beneficiaries, through a network of pharmacies, including Fairfax and Norms. In fact, approximately 30 percent of Norms' patients are members of Elixir's Prescription Drug Plan, and 50 percent of Fairfax's patients are members of Elixir's Plan.

COMPLAINT FOR INJUNCTIVE RELIEF

4.     On September 29, 2022, without giving Norms prior notice, Elixir informed Norms through an emailed "notice" (attached as Exhibit A hereto) that effective September 29, 2022, it "is suspended from the Elixir Rx Options, LLC ('Elixir') pharmacy network."  The following day, September 30, 2022, again without giving any advanced notice, Elixir informed Fairfax through an emailed notice (attached as Exhibit B hereto) that effective September 30, 2022, "it is suspended" from Elixir's pharmacy network.  According to each "form" notice, Elixir imposed the suspension because Elixir "had reason to believe" that each pharmacy engaged in, or is engaging in an activity or practice that may (a) pose a significant risk to the health, welfare, and/or safety of plan members, (b) promote or constitute fraud, waste or abuse, (c) be an act or omission that impairs the pharmacy's ability to meet the requirements of the Participating Pharmacy Agreement, "and/or" (d) be a material breach of the Agreement.  Elixir eventually confirmed that the suspensions were based only on "credible allegations of fraud" and the "pending results of an investigation on the alleged fraud."  Elixir refuses to provide Fairfax and Norms with any alleged facts regarding the substance or nature of the "credible allegations," thus preventing them from submitting any meaningful response.

5.     As a result of the suspensions, Fairfax and Norms "may not submit claims" to Elixir for any medications dispensed during this indefinite suspension period and may cancel checks previously paid to the pharmacies.  Additionally, Elixir indicates it will notify its Medicare Part D plan members that the pharmacies are suspended from the network, and the members will therefore either have to pay for the costs of their prescribed medications or find another network pharmacy.  Elixir continues to refuse to lift the suspensions and to provide the pharmacies with the information necessary for the pharmacies to provide a response or rebuttal to the fraud allegation.  As discussed below, the ongoing suspensions violate the controlling Medicare statutes and regulations; deny the pharmacies due process of

the law of the law; and deny them the fair process required under California decisional law.

## THE PARTIES

6. Fairfax Pharmacy is and has been for many years a duly licensed pharmacy located in the Fairfax District of Los Angeles. Norms Pharmacy is and has been for many years a duly licensed pharmacy located in Reseda, California. The pharmacies are family owned and operated.

7. Elixir was previously known as Envision Rx Plus. Its principal place of business is in Twinsburg, Ohio. Its owner, Envision Rx Options Holdings, Inc., is incorporated in Delaware. In 2015, Rite Aid Corporation acquired Envision Rx Options and changed its name to Elixir. As mentioned above, Elixir contracts with the Centers for Medicare and Medicaid Services ("CMS"), a division of the Department of Health and Human Services, as a "Sponsor" of a Prescription Drug Plan, under Part D of the Medicare Program. As such, it enters into contracts with a network of "participating" pharmacies, which furnish pharmacy services to Medicare beneficiaries. A copy of Elixir's form Participating Pharmacy Agreement is attached here as Exhibit C. A copy of Elixir's Medicare Part D "Pharmacy Manual" containing its "Supplemental Policies, Procedures and Regulations," is attached hereto as Exhibit D.

## THE CONTROLLING MEDICARE PRINCIPLES

8. Medicare is the federal healthcare insurance program for the aged and disabled. 42 U.S.C. § 1395 *et seq*. In 2003, Congress enacted the Medicare Prescription Drug Improvement and Modernization Act ("Act"), known also as Part D of the Medicare Program, a voluntary prescription drug benefit program for seniors, codified at 42 U.S.C. § 1395w-101 *et seq*. Under the Act, private health insurance companies, such as Elixir, contract with CMS to offer (sponsor) Part D prescription drug plans ("PDPs") to Medicare beneficiaries. The sponsors, in turn, establish pharmacy networks by contracting with private pharmacies to furnish

medications to members of the plans.

9. Sponsors' PDP contracts must meet numerous requirements under 42 U.S.C. § 1395w-112. Among other mandated obligations, they require PDP sponsors to pay "clean claims" submitted electronically by network pharmacies within 14 days. *See* 42 U.S.C. § 1395w-112(b)(4). And, they require PDP sponsor to **suspend payments** to a PDP network pharmacy pending the investigation of fraud by such network pharmacy **in the same manner that payments may be suspended to providers of healthcare services under Parts A and B of the Medicare program.** Medicare Part A and Part B cover inpatient hospital services and physician services, among others. *See* 42 U.S.C. § 1395w-112(b)(7)(A), which incorporates the payment suspension requirements of 42 U.S.C. § 1395y(o)(1). The latter statutory provision requires CMS to promulgate regulations to carry out Subsection (b)(7)(A) of Section 1395w-112. There is an important distinction between being suspended from the network and having payments suspended. If a pharmacy is suspended from a network, existing and new patients will have to pay their own costs of drugs. That is not the case with having payment temporarily suspended.

10. The CMS regulations governing payment suspensions to Medicare provider and suppliers, including pharmacies, are found at 42 C.F.R. §§ 405.371 and 405.372. Under Section 405.371(a)(2), in cases of suspected fraud, payments may be suspended, in whole or in part, by CMS or by a Medicare contractor if CMS or the Medicare contractor has consulted with the Office of Inspector General of the Department of Health and Human Services ("OIG"), and as appropriate, the Department of Justice, and determined that a credible allegation of fraud exists against a provider or supplier. Under Section 405.371(c)(1), with two exceptions not applicable here, CMS or a Medicare contractor suspends payments "only after" it has complied with the procedural requirements set forth at Section 405.372.

11. Under 42 C.F.R. § 405.372(a) and (b), prior notice of an intent to

suspend payments **must** be given to the provider or supplier, and the provider or supplier must be given the opportunity to submit a rebuttal. However, where the "intended suspension of payment involves credible allegations of fraud," CMS, but not the Medicare contractor, must direct the Medicare contractor as to the timing and content of the notification to the provider or supplier in accordance with 42 C.F.R. § 405.372(a)(4). CMS did not direct the suspensions at issue here.

## THE FACTS

12. As discussed above, Fairfax and Norms have been network pharmacy providers for Elixir's PDP for many years. Approximately 50 percent of Fairfax's patients/customers and 30 percent of Norms' patients/customers are members of Elixir's Medicare Part D Plan. Fairfax and Norms know of no circumstances or facts that could give rise to any credible evidence of fraud on their part. Yet, on September 29 and 30, 2022, Elixir summarily suspended Fairfax and Norms effective immediately "from the Elixir pharmacy network" and further stated that plan members who continue to choose Fairfax and Norms for their pharmacy needs "will be responsible for paying 100% of their prescription cost." Exhibits A and B.

13. Fairfax and Norms promptly challenged these actions in emails dated September 30 and October 1, 2022 (copies attached as Exhibit E hereto). Among other things, Fairfax and Norms informed Elixir that it was not able to respond in a meaningful manner to the conclusory contention that Elixir had reason to believe that it had credible evidence of fraud. They demanded that Elixir lift the suspensions because of Elixir's noncompliance with the controlling Medicare statutes and regulations and due process of the law. Yet, despite the demands of plaintiffs, as of the filing of this complaint, Elixir continues to refuse to rescind the suspensions.

14. As far as plaintiffs can reasonably determine, Elixir has unilaterally suspended them from the Elixir network of pharmacies without complying with the governing Medicare regulations. For example, Elixir had suspended Fairfax and

Norms from the pharmacy network, itself, rather than suspending only Medicare payments. And Elixir has done so without being directed to do so by CMS after consulting with the OIG.

16. Apparently, Elixir is purporting to follow the provisions of its own internal Pharmacy Manual, which Elixir insists are part of the pharmacies' contract with Elixir even though Elixir gives pharmacies no input in the making of such policies and procedures. Manual, Exh. D, page 4. At page 8 of its manual, Elixir indicates it has a "zero tolerance policy regarding fraud, waste and abuse matters," and will suspend a pharmacy "from participation in its Network" if the pharmacy has been identified or is under review for engaging in any behavior or practice that "promotes or commits fraud, waste, or abuse." The Elixir manual, at page 25, defines fraud as being the "intentional misrepresentation of a Claim or service billed but not rendered." While at page 18 of its manual, Elixir states that federal, state or local law, regulation or guidance may "supersede" Elixir's pharmacy audit guidelines, "[i]f a conflict occurs between an applicable law, regulation or guidance, to the extent permissible, the audit will follow the stricter provision."

## **ELIXIR'S ACTIONS VIOLATE FEDERAL LAW AND DENY PLAINTIFFS FAIR PROCESSES REQUIRED BY THE CONSTITUTION AND STATE COMMON LAW**

16. Elixir's September 29 and 30, 2022 suspensions and resulting actions are invalid and must be enjoined because:

    a. The controlling Medicare statutes and regulations do not authorize a PDP sponsor to summarily suspend a pharmacy from a pharmacy network even if credible allegations of fraud exist. Rather, under such federal laws and regulations, a PDP sponsor may, at most, temporarily suspend Medicare payments for the pharmacy services and drugs furnished to the sponsor's members;

    b. The controlling Medicare statutes and regulations only authorize the summary suspension of Medicare payments to a network pharmacy where

credible allegations of fraud exist (which plaintiffs vehemently deny and will ultimately challenge when given the opportunity to do so), and a Medicare contractor has been directed by CMS to impose such a summary suspension after CMS has consulted with the OIG; and

      c.    Under the circumstances here where Elixir is refusing to give plaintiffs a meaningful opportunity to be heard at a meaningful time, Elixir is depriving plaintiffs of due process of the law under the United States Constitution and under California common law.

## IRREPARABLE HARM

      17.    Unless immediately enjoined, Elixirs' suspension actions will continue to cause irreparable harm to plaintiffs, their pharmacy patients and their employees. Given Elixir's severe impact on Fairfax and Norms' customer base and resulting revenues resulting from the suspensions, the pharmacies will not be able to continue to meet their operating expenses much longer and may have to close, thus depriving the longtime customers of the pharmacies of their right to obtain pharmacy products and services from a pharmacy of their choosing. Those customers who are members of Elixir's prescription drug plan, will immediately have to choose between paying the costs of their prescribed drugs or moving to another pharmacy where their prescriptions will be paid for under Part D of the Medicare program. Moreover, the pharmacies will have to lay off employees, many of whom have been employed by the two pharmacies for years, if the suspensions are not lifted. Additionally, given Elixir's fraud contentions, the pharmacies and their owners and employees will suffer substantial harm to their reputations, as well as make it very difficult for them to continue to earn a living and support their families.

## THE LACK OF AN ALTERNATIVE REMEDY

      18.    The plaintiffs have no effective legal or administrative remedy available to them to obtain the injunctive relief sought here. Unlike other healthcare processes in cases of suspected fraud, there is no formal or even informal process to

challenge the suspensions. And, even if Elixir gives the plaintiffs an opportunity to be heard in some manner, it will be meaningless because Elixir refuses to provide plaintiffs with adequate information to challenge the allegedly credible evidence of fraud.

## PRAYER

WHEREFORE, plaintiffs pray as follows:

1. For an order temporarily and permanently enjoining Elixir from suspending them from Elixir's pharmacy network and from taking the other actions threatened by Elixir, including informing Elixir members of the suspensions and instructing them that they will have to pay for their pharmacy services and products if they continue to use Fairfax and Norms;

2. For costs of suit; and

3. For such other and further relief as the Court deems to be just and appropriate.

DATED: October 3, 2022        HOOPER, LUNDY & BOOKMAN, P.C.


By: _____*s/Patric Hooper*_____
        PATRIC HOOPER
Attorneys for Plaintiffs BDO CORPORATION dba FAIRFAX PHARMACY and WEST OAKS CORPORATION dba NORMS PHARMACY